## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALMA ZULI JACINTO-CASTANON DE NOLASCO,**
705 E Hanna Rd.
Eloy, AZ 85131;

**T.J.N.-J., a Minor, and D.E.N.-J., a Minor,**
5400 Pomona Blvd.
Los Angeles, CA 90022

        **Plaintiffs**,

    v.

**U.S IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"),**
500 12th Street SW
Washington, DC 20530;

**U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"),**
245 Murray Lane SW
Mailstop 0485
Washington, DC 20528-0075;

**U.S. CUSTOMS AND BORDER PROTECTION ("CBP"),**
1300 Pennsylvania Ave. NW
Washington, DC 20229;

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"),**
20 Massachusetts Avenue NW
Washington, D.C. 20529;

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES ("HHS"),**
200 Independence Avenue, S.W.
Washington, D.C.  20201;

**OFFICE OF REFUGEE RESETTLEMENT ("ORR"),**
Mary E. Switzer Building
330 C ST SW
Washington DC 20201;

**THOMAS HOMAN, ACTING DIRECTOR OF ICE,**
500 12th Street SW
Washington, D.C. 20536;

Case No. _____

**HENRY LUCERO, PHOENIX FIELD OFFICE DIRECTOR, ICE,**
2035 N Central Ave
Phoenix, AZ 85004;

**MICHAEL ZACKOWSKI, PHOENIX ASSISTANT FIELD OFFICE DIRECTOR, ICE,**
2035 N Central Ave
Phoenix, AZ 85004;

**KIRSTJEN NIELSEN, SECRETARY OF DHS,**
500 12th Street SW
Washington, DC 20536;

**JEFFERSON BEAUREGARD SESSIONS III, ATTORNEY GENERAL OF THE UNITED STATES,**
950 Pennsylvania Avenue NW
Washington, D.C. 20530;

**L. FRANCIS CISSNA, DIRECTOR OF USCIS,**
20 Massachusetts Avenue NW
Washington, D.C. 20529;

**KEVIN K. MCALEENAN, ACTING COMMISSIONER OF CBP,**
1300 Pennsylvania Ave, NW
Washington, DC 20229;

**WILLIAM K. BROOKS, TUCSON FIELD DIRECTOR, CBP,**
3002 E. Old Tower Road, Suite 400
Phoenix, AZ 85034;

**ALEX AZAR, SECRETARY OF HHS,**
200 Independence Avenue, S.W.
Washington, D.C.  20201;

**SCOTT LLOYD, DIRECTOR ORR,**
Mary E. Switzer Building
330 C ST SW
Washington DC 20201,

**Defendants**.

## PETITION FOR HABEAS CORPUS AND COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Alma Zuli Jacinto-Castanon de Nolasco ("Ms. Jacinto-Castanon") and her sons ("T.J.N.-J."), a minor child, ("D.E.N.-J."), a minor child, by and through counsel, file this petition for habeas corpus and civil action against Defendants United States Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Henry Lucero, Phoenix Field Office Director, ICE; Michael Zackowski, Phoenix Assistant Field Office Director, ICE; William K. Brooks, Tucson Field Director, CBP; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; William K. Brooks, Tucson Field Director of CBP; Alex Azar, Secretary of HHS; and Scott Lloyd, Director ORR (collectively, "Defendants") to vindicate their substantive and procedural due process rights under the Fifth Amendment of the U.S. Constitution and their rights under the International Convention on Civil and Political Rights, the United Nations Convention Relating to Status of Refugees, 8 U.S.C. § 1158, and the International Child Abduction Convention. In support, Ms. Jacinto-Castanon and her sons state as follows:

## **INTRODUCTION**

This case challenges the United States Government's forcible and continued separation of Ms. Jacinto-Castanon from her young children. Ms. Jacinto-Castanon is the mother of T.J.N.-J., an eleven-year-old son (born in 2007), and D.E.N.-J., a nine-year-old son (born in 2009). Jacinto-Castanon Aff. ¶ 8. On or about May 14, 2018, Ms. Jacinto-Castanon and her children were detained at or near Lukeville, Arizona. Jacinto-Castanon Aff. ¶ 9. On May 16, 2018, T.J.N.-J. and D.E.N.-J. were separated from their mother and removed to a different location. *Id.* at ¶¶ 12-

13.  Since that date T.J.N.-J. and D.E.N.-J. have been held separately and treated as "unaccompanied minors" despite the fact that they crossed the border with their mother.

1.  Ms. Jacinto-Castanon, T.J.N.-J., and D.E.N.-J. bring this action to compel the Government to reunite Ms. Jacinto-Castanon with her sons.  Ms. Jacinto-Castanon and her children came to the United States to seek asylum from persecution by gang members in Guatemala who murdered her husband and made ongoing threats to kill Ms. Jacinto-Castanon and kidnap her children.  *See id.* at ¶¶ 2-7.  Ms. Jacinto-Castanon is currently in a detention facility in Eloy, Arizona.  Upon information and belief, T.J.N.-J. and D.E.N.-J. are currently being held at Nuevo Amanecer Latino Children's Services, a shelter in Los Angeles, CA.  *Id.* at ¶ 18.

2.  The Due Process Clause of the U.S. Constitution's Fifth Amendment does not permit the Government to keep children from their parents without justification or even a hearing.

3.  On June 20, 2018, by Executive Order 13841 ("Executive Order"), President Trump ostensibly ended his administration's policy of forcibly separating children from their parents at the border.  Nonetheless, without any assertions of abuse, neglect, or parental unfitness, and with no hearings of any kind, the Government continues to detain parents and children separated prior to the issuance of the Executive Order, including Ms. Jacinto-Castanon and her sons.

4.  Numerous organizations, mental health professionals, and the American Academy of Pediatrics have been vocal in criticizing the forcible separation policy.  Forced separation from parents causes severe trauma to children, especially those who are already traumatized due to conditions in their homeland.  The resulting cognitive and emotional damage from separation can be permanent.  The Trump Administration acknowledged as much by ending the practice with the Executive Order on June 20, 2018.

5.      Defendants have made no attempt to reunite Ms. Jacinto-Castanon and her children.

6.      Given the irreparable and continuous emotional damage caused to Ms. Jacinto-Castanon and her children by the continued separation, Ms. Jacinto-Castanon requests immediate reunification with her children.

7.      Upon reunification, and during the pending asylum process, Ms. Jacinto-Castanon, requests that the Government issue a revised custody determination allowing her to be released, along with releasing the children from ORR custody to allow them to live together with a designated sponsor.  Ms. Jacinto-Castanon's niece, a United States Citizen and resident of North Carolina, is willing and able to sponsor Ms. Jacinto-Castanon and her sons, and will provide housing and support during the pendency of asylum proceedings.

8.      In the alternative, if Ms. Jacinto-Castanon is not first released individually, Defendants should reunite her with her sons in custody and immediately review and revise their custody determination to allow her and her children to be released under the least restrictive measures possible.

## JURISDICTION

9.      This case arises under the Fifth Amendment to the United States Constitution. The court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I., § 9, cl. 2 of the United States Constitution ("Suspension Clause"). Ms. Jacinto-Castanon and her sons are in custody for purposes of habeas jurisdiction.

## VENUE

10.      Venue is proper under 28 U.S.C. § 1391 because at least one of the Defendants is subject to personal jurisdiction in this district with regards to this action.

## PARTIES

11.     Plaintiff Ms. Jacinto-Castanon is a citizen of Guatemala.  She is the mother of Plaintiffs eleven-year-old T.J.N.-J. and nine-year-old D.E.N.-J. Jacinto-Castanon Aff. ¶ 8.

12.     Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

13.     Defendants U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States.

14.     Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border.

15.     Defendant U.S. Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that, through its Asylum Officers, conducts interviews of certain individuals apprehended at the border to determine whether they have a credible fear of persecution and should be permitted to apply for asylum.

16.     Defendant U.S. Department of Health and Human Services ("HHS") is a department of the executive branch of the Government which has been delegated with authority over "unaccompanied minors."

17.     Defendant Office of Refugee Resettlement ("ORR") is the component of HHS which provides care of and placement for "unaccompanied minors."

18.     Defendant Thomas Homan is sued in his individual capacity and his official capacity as the Director of ICE, was a legal custodian of Ms. Jacinto-Castanon at the time of separation, and is a custodian of Ms. Jacinto-Castanon's sons, T.J.N.-J. and D.E.N.-J.

19.     Defendant Henry Lucero is sued in his official capacity as the ICE Phoenix Field Office Director, was a legal custodian of Ms. Jacinto-Castanon at the time of separation, and is a custodian of Ms. Jacinto-Castanon's sons.

20.     Defendant Michael Zackowski is sued in his official capacity as the ICE Phoenix Assistant Field Office Director for the Eloy Detention Facility, was a legal custodian of Ms. Jacinto-Castanon at the time of separation, and is a custodian of Ms. Jacinto-Castanon's sons.

21.     Defendant Kirstjen Nielsen is sued in her individual capacity and official capacity as the Secretary of the Department of Homeland Security.  In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP.  As a result, Respondent Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, is empowered to grant asylum or other relief, was a legal custodian of Ms. Jacinto-Castanon at the time of separation, and is a custodian of Ms. Jacinto-Castanon's sons.

22.     Defendant Jefferson Beauregard Sessions III is sued in his individual capacity and his official capacity as the Attorney General of the United States.  At all times relevant to this Complaint, he had responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversaw the Executive Office of Immigration Review, was empowered to grant asylum or other relief, was a legal custodian of Ms. Jacinto-Castanon at the time of separation, and is a custodian of Ms. Jacinto-Castanon's sons, T.J.N.-J. and D.E.N.-J. At all times relevant to this Complaint, he had the power to direct his subordinates to carry out orders to separate children from parents seeking asylum and to produce or release Ms. Jacinto-Castanon's sons.

23.     Defendant L. Francis Cissna is sued in his individual and official capacity as the Director of USCIS.

24.     Defendant Kevin K. McAleenan is sued in his individual and official capacity as the Acting Commissioner of CBP.

25.     Defendant William K. Brooks is sued in his individual and official capacity as the Tucson Field Director of CBP.

26.     Defendant Alex Azar is sued in his individual capacity and his official capacity as the Secretary of the Department of Health and Human Services.

27.     Defendant Scott Lloyd is sued in his individual capacity and his official capacity as the Director of the Office of Refugee Resettlement.

## RELEVANT FACTS

### A.  Forced Separation Harms Children and Parents

28.     There is overwhelming medical evidence that the separation of a young child from his or her parent will cause devastating, permanent damage to the child's well-being, especially where there are other traumatic factors at work.

29.     Separating immigrant families at the border causes emotional trauma that could have lasting, negative impacts on young children, who are likely to develop toxic stress once separated from trusted caregivers or parents.  Such separation will disrupt a young child's brain development and increase the levels of fight-or-flight hormones in the child's body, eventually leading to health problems, such as heart disease and substance abuse disorders.

30.     The American Association of Pediatrics has denounced the practice of separating immigrant children from their parents, noting that: "The psychological distress, anxiety, and depression associated with separation from a parent would follow the children well after the immediate period of separation—even after the eventual reunification with a parent or other family." Julie M. Linton, Marsha Griffin, Alan J. Shapiro, American Academy of Pediatrics Policy

Statements, *Detention of Immigrant Children*, Pediatrics, Volume 139, Num. 4, April 2017.  The president of the American Academy of Pediatrics has this month called the Government's practice of separating migrant parents from their children "nothing less than government-sanctioned child abuse." Catherine E. Shoichet, *Doctors Saw Immigrant Kids Separated From Their Parents.  Now They're Trying to Stop It,* https://www.cnn.com/2018/06/14/health/immigrant-family-separation-doctors/index.html, (visited June 27, 2018).

**B. Defendants Enacted Policies to Separate Families Starting in Late 2017**

31.     While it is true that prior administrations also detained immigrant families, the Trump Administration is the first to forcibly separate fit parents from their young children.  Over the past year, the Government has separated thousands of immigrant families.

32.     The Government does not allege that these parents are unfit or abusing their children in any way. Yet, it forcibly separates these parents from their young children. The Government then detains these separated young children—who were initially accompanied by their parents at the border—in facilities for "unaccompanied minors."

33.     Until late 2017, Defendants' policy was to maintain immigrant families intact as they enforced immigration laws.  Defendants previously committed that "ICE will maintain a comprehensive process for identifying, placing, monitoring, accommodating, and removing alien parents or legal guardians of minor children *while safeguarding their parental rights.*" IMMIGRATION & CUSTOMS ENF'T, FACILITATING PARENTAL INTERESTS IN THE COURSE OF CIVIL IMMIGRATION ENFORCEMENT ACTIVITIES, https://cis.org/sites/default/files/Parental_Interest_Directive_8-23-13.pdf, (Aug. 23, 2013).   ICE defined "parental rights" to mean "[t]he fundamental rights of parents to make decisions concerning the care, custody, and control of their minor children without regard to the child's citizenship, as provided for and limited by applicable

7

law." *Id.*  On August 29, 2017, Defendants rescinded the quoted language. *See* Alan J. Dettlaff, *Immigrant and Refugee Children and Families: Culturally Responsive Practice*, Columbia University Press (2016).

34.     Starting slowly in late 2017, and more rapidly as 2018 progressed, Defendants began routinely separating immigrant parents from their children. See *United States v. Dominguez-Portillo*, No. EP-17-MJ-4409, 2018 WL 315759 at *1-8 (W.D. Tex. Jan. 5, 2018).

35.     In April 2018, Defendant Sessions announced a "Zero Tolerance" policy for all families that cross the Southwest border, specifically directing U.S. Attorneys Offices of Southern District of California, District of Arizona, District of New Mexico, Western District of Texas, and the Southern District of Texas to criminally prosecute all Department of Homeland Security referrals of section 1325(a) violations.  As a result, when the parents are jailed for the formerly administrative—now criminal—offense of crossing the border, the children—be they infants, toddlers, pre-teens, or young teenagers—are separated from the parents and placed in HHS custody.

36.     Although entering the United States without inspection is technically a crime under 1325(a), courts describe it as "quite literally one of the least serious federal offenses." *Dominguez-Portillo*, 2018 WL 315759 at *8. Congress defines a first violation of § 1325(a) as a "petty misdemeanor" punishable by up to six months' incarceration. 18 U.S.C. § 19.

37.     Judges almost never impose six months' incarceration for violation of § 1325(a). Instead, in thousands of § 1325(a) prosecutions every year, the standard sentence for a person with no criminal or immigration history is "time served," meaning that the one-to-three days that a person awaits appearance in court after arrest is the only criminal sanction imposed.  Judges alone decide § 1325(a) sentencing, not Defendants, including the Attorney General. 18 U.S.C. §

3553(a)(1). Judges consider need to care for children as part of sentencing. *See United States v. King*, 201 F. Supp. 3d 167, 171 (D.D.C. 2016).

38.     Almost all § 1325(a) prosecutions and sentencing will be concluded within days after arrest.

39.     Defendants cite the fact of a § 1325(a) prosecution as a pretext for separating parents from their children indefinitely.

40.     Nearly 2,000 immigrant children were separated from parents during six weeks in April and May of this year, according to the Department of Homeland Security.

41.     On June 20, 2018, President Trump ostensibly ended his administration's policy of forcibly separating children from their parents at the border by signing Executive Order 13841. Executive     Order     13841     (June     20,     2018),     https://s3.amazonaws.com/public-inspection.federalregister.gov/2018-13696.pdf (visited June 27, 2018).

42.     However, the Executive Order failed to address whether families already detained and separated by Defendants would be reunited; and if so, when. The Trump administration has left open the possibility that children may never be reunited with the parent from whom they were separated at the border, noting only that "it is still very early, and we are awaiting further guidance on the matter." Charlie Savage, *Explaining Trump's Executive Order on Family Separation*, https://www.nytimes.com/2018/06/20/us/politics/family-separation-executive-order.html (visited June 27, 2018).

43.     On Saturday, June 23, 2018, DHS issued a "Fact Sheet" outlining the Government's efforts to "ensure that those adults who are subject to removal are reunited with their children for the purposes of removal." *See* U.S. DEP'T OF HOMELAND SEC., FACT SHEET: FEDERAL REGULATIONS PROTECTING THE CONFIDENTIALITY OF ASYLUM APPLICANTS (June 23, 2018),

https://www.dhs.gov/news/2018/06/23/fact-sheet-zero-tolerance-prosecution-and-family-reunification (visited June 27, 2018).   The Fact Sheet does nothing to clarify the Government's approach to separated families seeking asylum.   The Fact Sheet focuses on, among other things, processes for enhanced communication between separated parents and children "*for the purposes of removal*." The Fact Sheet does not provide any further information regarding timing or approach to reunification, or even intent to reunify, families seeking asylum; indeed, the word "asylum" does not appear in the Fact Sheet.

### C.  Defendants Forcibly Separated Plaintiff from her Children and Maintain Separation Despite The Policy Change

44.     Defendants forcibly separated Ms. Jacinto-Castanon from her sons, T.J.N.-J. and D.E.N.-J. Ms. Jacinto-Castanon has been given only limited and untimely information regarding her sons' whereabouts and condition, and has been given no indication of when they will be reunited.

45.     Ms. Jacinto-Castanon and her sons are citizens of Guatemala seeking asylum in the United States.   Jacinto-Castanon Aff. ¶ 7.   Her husband was murdered by gang members in Guatemala because he refused to pay extortion fees in connection with a restaurant he and Ms. Jacinto-Castanon owned and operated for approximately four months.   Gang members then continued to stalk Ms. Jacinto-Castanon and threatened to kill her and kidnap her children.   Ms. Jacinto-Castanon made the difficult choice to leave her oldest children in Guatemala and travel with her two youngest children to seek asylum in the United States.   *Id.* at ¶¶ 6-7.

46.     Ms. Jacinto-Castanon and her children crossed the U.S. border on May 14, 2018. *Id.* at ¶ 7.   They were approached by border agents and made their intent to seek asylum known. They were then apprehended and placed in a holding cell together.   *Id.* at ¶ 9.

47.     On May 15, 2018, Ms. Jacinto-Castanon and her sons were moved to another detention center. At the second detention center, officials housed Ms. Jacinto-Castanon and her sons in separate rooms. *Id.* at ¶ 10. Ms. Jacinto-Castanon could hear her children crying and asked an immigration officer if she could console them. *Id.* at ¶ 11. The officers allowed the family only one minute to be together, threatening that Ms. Jacinto-Castanon would have to leave immediately after the minute was up, or they would deport the entire family. *Id.* Ms. Jacinto-Castanon acquiesced and left the children in the room. *Id.*

48.     On May 16, 2018, officials told Ms. Jacinto-Castanon that she had to go to a court hearing. They told her that her children could not attend court with her, but would be waiting for her when she returned. *Id.* at ¶ 12.

49.     When Ms. Jacinto-Castanon returned from court, she asked for her children, but they were gone. *Id.* at ¶ 13. Officials told her that her children had been taken away but did not tell her to where. *Id.* Instead, officials told Ms. Jacinto-Castanon that if the Government wanted to keep her children, it would, and that if it did, Ms. Jacinto-Castanon would be deported alone and be forced to leave her sons behind. *Id.*

50.     Ms. Jacinto-Castanon was then placed in the detention facility's shower room alone, where she was in isolation for three days until May 18, 2018. *Id.* at ¶ 14. On May 18, 2018, Ms. Jacinto-Castanon was moved into a different facility and was detained along with other women. *Id.* at ¶ 15.

51.     Ms. Jacinto-Castanon believes that her children are currently being held in Los Angeles, California whereas she remains in Eloy, Arizona. Ms. Jacinto-Castanon believes her children are in a shelter during the day, and then stay with an unrelated and unknown family at night. *Id.* at ¶¶ 16, 18.

52.     Ms. Jacinto-Castanon is allowed to speak to her children only twice each week, and each call is limited to 15 minutes.  *Id.* at ¶ 19.

53.     Ms. Jacinto-Castanon tells her children that she is close by, even though she is in Arizona, so that they will be less frightened. *Id.* at ¶ 20.  Ms. Jacinto-Castanon's sons tell her that they are upset and afraid, and they wish to be together as a family.  *Id.*  Ms. Jacinto-Castanon's youngest son cries and tells her he has nightmares.  *Id.*

54.     Ms. Jacinto-Castanon presently has no idea when or how she will be reunited with her children.  The separation has caused Ms. Jacinto-Castanon a profound anguish, a deep sense of helplessness, and depression.  *See id.* at ¶ 21.

55.     Ms. Jacinto-Castanon and her children desire to be together during the pendency of her asylum application.  *Id.*

## CAUSES OF ACTION

## COUNT I

## (Punishment of Civil Detainees in Violation of Due Process)

56.     The U.S. Constitution's Fifth Amendment prohibits punishment of immigrants held in civil detention.  *Bell v. Wolfish*, 441 U.S. 520, 538-39 & n.20 (1979).

57.     At all times after Ms. Jacinto-Castanon and her sons were placed in a detention center, Defendants and their agents and employees have continuously detained Ms. Jacinto-Castanon and her sons pursuant to civil immigration detention statutes or as persons charged with crime awaiting trial.  Defendants have never detained Ms. Jacinto-Castanon or her sons as convicted criminals.

58.     Defendants intend to punish Ms. Jacinto-Castanon and her sons by taking the following actions:

    a.  forcibly separating them;

    b.  maintaining separation indefinitely; and

    c.  failing to provide meaningful information to Ms. Jacinto-Castanon or her sons about one another's well-being, and anticipated reunification.

59.     The following actions taken by Defendants punish Ms. Jacinto-Castanon and her sons regardless of any intent by any Defendant because they are patently excessive in relation to any legitimate objective:

    a.  forcibly separating them;

    b.  maintaining separation indefinitely; and

    c.  failing to provide meaningful information to Ms. Jacinto-Castanon or her sons about one another's well-being, and anticipated reunification

## COUNT II

### (Family Separation in Violation of Substantive Due Process)

### (Against All Defendants Except USCIS Defendants in their official capacities)

60.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

61.     The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all "persons" on United States soil, including Ms. Jacinto-Castanon and her sons, T.J.N.-J. and D.E.N.-J.

62.     Ms. Jacinto-Castanon and her sons have a liberty interest under the Due Process Clause in remaining together as a family.

63.     The separation of the Ms. Jacinto-Castanon from her sons violates substantive due process because it furthers no legitimate purpose, not to mention a compelling governmental interest.

## COUNT III

### (Family Separation in Violation of Substantive Due Process: Supervisory Liability)

### (Against Defendants Homan, Nielsen, Sessions, Cissna, McAleenan, Brooks, Azar, and Lloyd in their individual capacities)

64.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

65.     The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all "persons" on United States soil, including Ms. Jacinto-Castanon and her sons, T.J.N.-J. and D.E.N.-J.

66.     Ms. Jacinto-Castanon and her sons have a liberty interest under the Due Process Clause in remaining together as a family.

67.     The separation of Ms. Jacinto-Castanon from her sons violates substantive due process because it furthers no legitimate purpose, not to mention a compelling governmental interest.

## COUNT IV

### (Family Separation in Violation of Procedural Due Process: Violation of 5th Amendment of the U.S. Constitution under 42 U.S.C. § 1983)

### (Against All Defendants Except USCIS Defendants in their official capacities)

68.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

69.     The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all "persons" on United States soil, including Ms. Jacinto-Castanon and her sons, T.J.N.-J. and D.E.N.-J.

70.     Ms. Jacinto-Castanon and her sons have a liberty interest under the Due Process Clause in remaining together as a family.

71.     The separation of Ms. Jacinto-Castanon from her children also violates procedural due process because it was undertaken without any hearing, and Ms. Jacinto-Castanon was not given any paperwork to indicate how she can retrieve her children from detention.

## COUNT V

### (Family Separation in Violation of Procedural Due Process: Supervisor Liability)

### (Against Defendants Homan, Nielsen, Sessions, Cissna, McAleenan, Brooks, Azar, and Lloyd in their individual capacities)

72.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

73.     The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all "persons" on United States soil, including Ms. Jacinto-Castanon and her sons, T.J.N.-J. and D.E.N.-J.

74.     Ms. Jacinto-Castanon and her sons have a liberty interest under the Due Process Clause in remaining together as a family.

75.     The separation of Ms. Jacinto-Castanon from her children also violates procedural due process because it was undertaken without any hearing, and Ms. Jacinto-Castanon was not given any paperwork to indicate how she can retrieve her children from detention.

## COUNT VI

### (Administrative Procedure Act—Arbitrary and Capricious Practice)

### (Against All Defendants Except USCIS Defendants)

76.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

77.     The APA prohibits agency action that is arbitrary and capricious and contrary to constitutional right.

78.     Defendants' separation of Ms. Jacinto-Castanon from her sons without a compelling justification and without a mechanism, protocol, or system to guarantee their reunification is final agency action that is arbitrary and capricious.  It accordingly violates the APA. 5 U.S.C. § 706(2)(A).

## COUNT VII

### (Violation of Asylum Statute)

79.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

80.     Under United States law, noncitizens fleeing persecution shall have the opportunity to apply for asylum in the United States.  See 8 U.S.C. § 1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158(a)(1).  Ms. Jacinto-Castanon and her sons have a private right of action to vindicate their right to apply for asylum.

81.     Defendants' separation of Ms. Jacinto-Castanon from her sons violates federal asylum law, because it infringes on the children's ability to pursue their asylum claims.

## COUNT VIII

### Petition for Habeas Corpus under Treaties of the United States: International Convention on Civil and Political Rights

### (Claim for Injunctive and Declaratory Relief against all Defendants in their official capacities)

82.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

83.     The ICCPR has been signed and ratified by the United States.

84.     Under Article 17 of the ICCPR "[n]o one shall be subjected to arbitrary or unlawful interference with her privacy, family, home or correspondence, nor to unlawful attacks on her honor and reputation." Article 23 states that "family is the natural and fundamental group unit of society and is entitled to protection by society and the State."

17

85.     By forcibly separating Ms. Jacinto-Castanon and her sons, Defendants have subjected Ms. Jacinto-Castanon and her sons to arbitrary, unlawful, and unjustified interference with her family in violation of the ICCPR.

## COUNT IX

### Petition for Habeas Corpus under Laws and Treaties of the United States: United Nations Convention Relating to Status of Refugees and 8 U.S.C. § 1158

### (Claim for Injunctive and Declaratory Relief against all Defendants in their official capacities)

86.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

87.     The United States is party to the 1967 Protocol Relating to the Status of Refugees and key provisions have been incorporated into U.S. law giving individuals a cause for action for litigation.   Under federal law, "any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum . . .".  8 U.S.C. § 1158.

88.     Because the right to seek asylum and the definition of refugee, which stems from an international treaty, is directly incorporated into federal law, it creates a legal cause for action for Ms. Jacinto-Castanon and her sons.

89.     By interfering with Ms. Jacinto-Castanon's parental rights to be with her sons, these Defendants have unlawfully interfered with her right to seek asylum with her sons and punished her for doing so by ripping her sons away from her after seeking asylum.

## COUNT X

### Petition for Habeas Corpus under Treaties of the United States: International Child Abduction Convention (ICAC)

### (Claim for Injunctive and Declaratory Relief against all Defendants in their official capacities)

90.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

91.     The ICAC provides that the removal or retention of a child is "wrongful" whenever:

a.   It is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b.   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention. These rights of custody may arise by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of the country of habitual residence.

92.     Defendants have in effect abducted Ms. Jacinto-Castanon's sons from her lawful custody and have not given her any information on her whereabouts or her condition.

## COUNT XI

### Violation of the International Child Abduction Remedies Act (ICARA)

### (Claim for Injunctive Relief against all Defendants in their official capacities)

93.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

94.     The ICAC provides that the removal or retention of a child is "wrongful" whenever:

a.   It is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b.   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention. These rights of custody may arise by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of the country of habitual residence.

95.     The ICARA is the implementing legislation for the ICAC, creating a private right of action for claimants.

96.     Defendants have effectively abducted Ms. Jacinto-Castanon's sons from her lawful custody and have not given her any information on her whereabouts or her condition.

## COUNT XII

## PUNITIVE DAMAGES

## (Against Defendants Homan, Nielsen, Sessions, Cissna, McAleenan, Brooks, Azar, and Lloyd in their individual capacities)

97.     Based on the foregoing, Ms. Jacinto-Castanon and her sons are entitled to punitive damages because these Defendants acted with a willful indifference to the laws that protect Ms. Jacinto-Castanon and her sons' constitutional rights.

## COUNT XIII

## ATTORNEYS' FEES

98.     Based on the foregoing, Ms. Jacinto-Castanon and her sons are entitled to attorneys' fees under all applicable laws.

## PRAYER FOR RELIEF

A.     Declare unlawful the separation of Ms. Jacinto-Castanon from her minor sons;

B.     Preliminarily and permanently enjoin Defendants from continuing to separate Ms. Jacinto-Castanon from her children by detaining her in a separate location from where her children are held;

C.     Where Ms. Jacinto-Castanon's sons have not already been released, order Defendants to expeditiously release Ms. Jacinto-Castanon and her sons, or to immediately reunite Ms. Jacinto-Castanon with her sons in a facility and immediately make a revised custody determination allowing release of Ms. Jacinto-Castanon and her sons on their own recognizance or under the least onerous "Alternative to Detention" measures possible;

D. Declare that Defendants, if they have not done so for the children, have an obligation to provide credible fear interviews for persons subject to expedited removal under 8 U.S.C. § 1225 within 10 days of any individual requesting asylum or expressing a fear of persecution or torture if that person remains detained;

E. Enjoin Defendants from removing Ms. Jacinto-Castanon from the country until she is reunited with her children;

F. In the event that Ms. Jacinto-Castanon is not permitted to remain in the United States, enjoin Defendants from separating Ms. Jacinto-Castanon absent her permission or a hearing before a court where the Government demonstrates that it is not in the children's best interest to be reunified with their parent;

G. Award compensatory damages to Ms. Jacinto-Castanon, including pain and suffering arising from the separation between Ms. Jacinto-Castanon and her sons;

H. Award punitive damages for the conscious disregard for Ms. Jacinto-Castanon's rights;

I. Require Defendants to pay reasonable attorneys' fees and costs;

J. Order all other relief that is just and proper.

Respectfully submitted this 27th day of June 2018,

/s/Claudia O'Brien
Claudia O'Brien, DC Bar No. 447354
Timilin Sanders, DC Bar No. 989110
Clayton LaForge, DC Bar No. 1033938
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington DC 20004
(202) 637-2200
claudia.o'brien@lw.com