# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ALMA ZULI JACINTO-CASTANON DE NOLASCO,**
705 E Hanna Rd.
Eloy, AZ 85131;

**T.J.N.-J., a Minor, and D.E.N.-J., a Minor,**
5400 Pomona Blvd.
Los Angeles, CA 90022

        **Plaintiffs**,

    v.

**U.S IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"),**
500 12th Street SW
Washington, DC 20530;

**U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"),**
245 Murray Lane SW
Mailstop 0485
Washington, DC 20528-0075;

**U.S. CUSTOMS AND BORDER PROTECTION ("CBP"),**
1300 Pennsylvania Ave. NW
Washington, DC 20229;

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"),**
20 Massachusetts Avenue NW
Washington, D.C. 20529;

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES ("HHS"),**
200 Independence Avenue, S.W.
Washington, D.C.  20201;

**OFFICE OF REFUGEE RESETTLEMENT ("ORR"),**
Mary E. Switzer Building
330 C ST SW
Washington DC 20201;

**THOMAS HOMAN, ACTING DIRECTOR OF ICE,**
500 12th Street SW
Washington, D.C. 20536;

Case No. _____

| | |
|---|---|
| **HENRY LUCERO, PHOENIX FIELD OFFICE DIRECTOR, ICE,**<br>2035 N Central Ave<br>Phoenix, AZ 85004;<br><br>**MICHAEL ZACKOWSKI, PHOENIX ASSISTANT FIELD OFFICE DIRECTOR, ICE,**<br>2035 N Central Ave<br>Phoenix, AZ 85004;<br><br>**KIRSTJEN NIELSEN, SECRETARY OF DHS,**<br>500 12th Street SW<br>Washington, DC 20536;<br><br>**JEFFERSON BEAUREGARD SESSIONS III, ATTORNEY GENERAL OF THE UNITED STATES,**<br>950 Pennsylvania Avenue NW<br>Washington, D.C. 20530;<br><br>**L. FRANCIS CISSNA, DIRECTOR OF USCIS,**<br>20 Massachusetts Avenue NW<br>Washington, D.C. 20529;<br><br>**KEVIN K. MCALEENAN, ACTING COMMISSIONER OF CBP,**<br>1300 Pennsylvania Ave, NW<br>Washington, DC 20229;<br><br>**WILLIAM K. BROOKS, TUCSON FIELD DIRECTOR, CBP,**<br>3002 E. Old Tower Road, Suite 400<br>Phoenix, AZ 85034;<br><br>**ALEX AZAR, SECRETARY OF HHS,**<br>200 Independence Avenue, S.W.<br>Washington, D.C.  20201;<br><br>**SCOTT LLOYD, DIRECTOR ORR,**<br>Mary E. Switzer Building<br>330 C ST SW<br>Washington DC 20201,<br><br>      **Defendants**. | |

# **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs Alma Zuli Jacinto-Castanon de Nolasco ("Ms. Jacinto-Castanon"), and her sons T.N.J, a minor child, and D.N.J., a minor child (collectively, "Plaintiffs") respectfully move this Court for a preliminary injunction enjoining Defendants United States Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Henry Lucero, Phoenix Field Office Director, ICE; Michael Zackowski, Phoenix Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; William K. Brooks, Tucson Field Director, CBP; Alex Azar, Secretary of HHS; and Scott Lloyd, Director ORR (collectively, "Defendants") from continuing to forcibly separate Ms. Jacinto-Castanon from her sons.  Plaintiffs seek an order directing Defendants to immediately reunite Ms. Jacinto-Castanon with her sons and facilitate their release from custody while her asylum case is pending.  Such relief is necessary to ensure the integrity of Plaintiffs' substantive and procedural due process rights under the Fifth Amendment of the U.S. Constitution and their rights under the International Convention on Civil and Political Rights, the United Nations Convention Relating to Status of Refugees, 8 U.S.C. § 1158, and the International Child Abduction Convention and to avoid irreparable harm to Plaintiffs.

## FACTUAL BACKGROUND

On May 14, 2018, Ms. Jacinto-Castanon and her sons, citizens of Guatemala, crossed the United States border together from Mexico seeking asylum from gang violence in their hometown in Guatemala. *See* Jacinto-Castanon Aff. ¶¶ 1-7. Plaintiffs were fleeing an untenable situation of intimidation and persecution by a gang that murdered Ms. Jacinto-Castanon's husband and repeatedly threatened her life and the safety of her children. Jacinto-Castanon Aff. ¶¶ 2-7. Once Plaintiffs arrived in the United States, they were apprehended and placed together in a detention center in Southern Arizona. Jacinto-Castanon Aff. ¶ 9. On May 15, 2018, agents of the Government moved Plaintiffs moved to another detention center near Tucson. Jacinto-Castanon Aff. ¶ 10. At this second detention center, Ms. Jacinto-Castanon was housed in a separate room from her children; she was not allowed to see them or speak with them. Jacinto-Castanon Aff. ¶ 13. At one point, Ms. Jacinto-Castanon heard her children crying and requested permission to console them. Jacinto-Castanon Aff. ¶ 11. One agent granted permission; however, upon reaching her children, another agent told Ms. Jacinto-Castanon she would only have one minute with her children, and if she did not leave after one minute, the agents would deport Plaintiffs. *Id*.

Ms. Jacinto-Castanon had another court hearing on May 16, 2018, and when she returned from court, her children were gone. Jacinto-Castanon Aff. ¶ 13. Immigration officers told Ms. Jacinto-Castanon that her children had been taken away, and that if the Govenrment wanted to, it would keep her children and deport her alone. Jacinto-Castanon Aff. ¶ 13. Ms. Jacinto-Castanon was then placed into the detention center's shower room, where she was kept in isolation for three days. Jacinto-Castanon Aff. ¶ 14. At one point, another woman was briefly placed in the shower room as well, but she was removed quickly. Jacinto-Castanon Aff. ¶ 14. During her isolation, Ms. Jacinto-Castanon received meals four times a day, a foil blanket, and a mattress to lay on the bare floor. Jacinto-Castanon Aff. ¶ 14. She could only leave the shower room to go to another room to

bathe, only to clothe herself once-again in the dirty clothing she wore while crossing the border. Jacinto-Castanon Aff. ¶ 14.

On May 18, 2018 Ms. Jacinto-Castanon was moved to another room with other women and on then moved again on May 19, 2018 to the detention center in Eloy, Arizona where she is currently detained. Jacinto-Castanon Aff. ¶¶ 15-16. On May 20, 2018, Ms. Jacinto-Castanon submitted a request form to find out where her children were. Jacinto-Castanon Aff. ¶ 17. On May 22, 2018 she received a written response stating that her children were okay but provided no information regarding her children's location. Jacinto-Castanon Aff. ¶ 17. On May 23, 2018, five days after being separated from her children, Ms. Jacinto-Castanon was taken to a visitation room where she was connected telephonically to her children. Jacinto-Castanon Aff. ¶ 18. Her children reported that they were in Los Angeles, California staying at a shelter during the day and somewhere else at night. Jacinto-Castanon Aff. ¶18.

Ms. Jacinto-Castanon has been allowed to make telephone calls to her children only twice a week for a maximum of fifteen minutes per phone call. Jacinto-Castanon Aff. ¶19. Her youngest son cries and tells Ms. Jacinto-Castanon that he has nightmares. Jacinto-Castanon Aff. ¶ 20. Separation from her children causes Ms. Jacinto-Castanon stress and anxiety, and she strongly wishes to be reunited with her children while undertaking asylum proceedings. Jacinto-Castanon Aff. ¶ 21. Furthermore, Ms. Jacinto-Castanon's niece is a U.S. Citizen who resides in North Carolina and has offered to sponsor Ms. Jacinto-Castanon and her children during the pendency of Ms. Jacinto-Castanon's asylum proceedings. Jacinto-Castanon Aff. ¶ 22.

**ARGUMENT**

Plaintiffs move to preliminarily enjoin the United States from forcibly separating Ms. Jacinto-Castanon from her sons.

I.  **APPLICABLE LEGAL STANDARDS**

A movant for a preliminary injunction "must demonstrate (1) a substantial likelihood of success on the merits, (2) that [they] would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009) (internal citations omitted). Further, a district court must balance the strength of a plaintiff's arguments in each of the four elements when deciding whether to grant a preliminary injunction. *Id.* If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are weaker. *Id.* Accordingly, an injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury. *Id.*

II.  **THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION**

   A.  **Likelihood of Success on the Merits**

Ms. Jacinto-Castanon has asserted various claims relating to the forced separation of her children from her care, custody, and control – a separation that occurred without any finding that she was unfit or that she posed a threat to her children.

Under the Due Process Clause of the Fifth Amendment, no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amend. V. Non-citizens on United States soil have constitutional rights, including the right to due process of law. *Yick Wo v. Hopkins*, 118 U.S. 356, 368-69 (1886); *Matthew v. Diaz*, 426 U.S. 67, 77 (1976). It is also well settled that the liberty interests protected by the Fifth Amendment include the right to family integrity and association. *Quillion v. Walcott*, 434 U.S. 246, 255 (1978). Therefore, Ms. Jacinto-Castanon is entitled to the protections of the Fifth Amendment, protections that include her right to family integrity and association with her children.

In depriving Ms. Jacinto-Castanon of her right to family integrity and association, Defendants made no finding that she was unfit or that she posed a threat to her children. *See Ms. L. v. U.S. Immigration & Customs Enf't*, No. 18-cv-428 DMS (MDD) (S.D. Cal. June 26, 2018) (order granting preliminary injunction), ECF No. 83, at 3 (citing *Ms. L. v. U.S. Immigration & Customs Enf't*, 302 F. Supp. 3d 1149, 2018 WL 2725736, at *7-12 (S.D. Cal. June 6, 2018)); *see* Compl. ¶ 3; *see generally*, Jacinto-Castanon Aff. Instead, without any attempt at due process, Defendants separated Ms. Jacinto-Castanon's children from her. "Were a substantial number of young children knowingly placed in harm's way, it is easy to imagine how viable claims might lie." *Aguilar v. U.S. Immigration and Customs Enf't Div. of Dept. of Homeland Sec.*, 510 F.3d 1, 22 (1st Cir. 2007). The interest of parents in the care, custody, and control of their offspring is among the most fundamental rights protected by the Fifth Amendment. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000). Deprivations of such rights without any particularized finding of unfitness or threat to the child violate Plaintiff's Due Process rights. *Quillion*, 434 U.S. at 255 (noting that the Court has little doubt "the Due Process Clause would be offended if a State were to attempt to force the breakup of a natural family . . . without some showing of unfitness") (internal citations omitted). Further, such actions shock the conscience. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998) (holding that a "shocks the conscience" standard applies to due process claims); *see* Jacinto-Castanon Aff. ¶ 11 ("I could hear my children crying [in a different room]."), ("I only had one minute [to console my children], and after that I had to leave, or else they would deport us all."), ¶ 14 ("I was then moved to one of the detention center's shower rooms. I was kept there alone [for three days].").

Ms. Jacinto-Castanon alleges that Defendants, in an effort to serve ulterior immigration goals, have deprived Plaintiff (like thousands of others) of her rights to her children. *See* Jacinto-Castanon Aff. ¶ 13. She legally sought asylum protection from persecution in her home country.

5

These allegations alone are sufficient to provide a high likelihood of success on the merits. However, Plaintiffs also asserted various claims for habeas relief, and claims under the International Child Abduction Remedies Act ("ICARA"). *See* Compl. ¶ 98-101. These claims demonstrate that Defendants' actions were unlawful under various international treaties to which the United States is a signator and, therefore, which constitute the law of the land. U.S. Const. art. VI. Indeed, the Chief of the United Nations recently announced that the United States policy at issue in this case violates international law and several treaties the U.S. has signed. Nick Cumming-Bruce, *U.N. Civil Rights Chief Tells U.S. to Stop Taking Migrant Children from Parents*, N.Y. TIMES, June 18, 2018, https://www.nytimes.com/2018/06/18/world/europe/trump-migrant-children-un.html (noting that this is a violation of children's rights and international law). For these reasons, Plaintiffs have a high likelihood of success and this Court should grant this Motion for a Preliminary Injunction.

    **B.**    **Irreparable Injury if Injunction is Not Granted**

To be irreparable, a harm must be "certain and great, actual and not theoretical, and of such imminence that there is a clear and present need for equitable relief," as well as "beyond remediation, meaning: mere injuries . . . in terms of money, time, and energy necessarily expended in the absence of a stay are not enough." *Fraternal Order of Police Library of Cong. Labor Comm. v. Library of Cong.*, 639 F. Supp. 2d 20, 24 (D.D.C. 2009).

Plaintiffs' irreparable harm is clearly established in this case. In *R.I.L-Rv v. Johnson*, this Court addressed a temporary restraining order request on behalf of a class of Central American immigrant mothers, accompanied by their minor children, who fled to the United States seeking asylum and were held under a "No-Release Policy," after a determination of credible fear was made, in order to deter future immigration. 80 F. Supp. 3d 164, 172 (D.D.C. 2015). Finding irreparable harm, this Court noted the "myriad ways" such detention harms those held. *Id*. at

6

191. Such detention is "particularly harmful to minor children." *Id.*; *see also* Julie M. Linton, Marsha Griffin, Alan J. Shapiro, *Detention of Immigrant Children*, Pediatrics, Volume 139, Num. 4, April 2017 ("Young detainees may experience developmental delay and poor psychological adjustment, potentially affecting functioning in school, . . . high rates of posttraumatic stress disorder, anxiety, depression, suicidal ideation, and other behavioral problems."). The deprivations and harms suffered by Ms. Jacinto-Castanon and her minor children are only magnified by the needless, punitive separation that is clearly not in the best interest of the children. *See* Petition from Mental Health Professionals: Stop Border Separation of Children from Parents, Child's World America https://childsworldamerica.org/stop-border-separation/stop-border-separation-text-preview/ (noting the extensive research and clinical experience demonstrating negative impacts of separation of children from their parents).

Further, as the Court found in *Johnson*, these injuries are "beyond remediation." 80 F. Supp. 3d at 191. Unlike economic harm, the harms from detention are long-lasting, perhaps permanent, and cannot be remediated by monetary awards. *Id.*; Linton, *Detention of Immigrant Children*, at 6 (describing the various long-lasting effects of detention, including physical and psychological damage). This severe, permanent, and irreparable harm demonstrates that this Court should grant this Motion for a Preliminary Injunction.

No other present policy sufficiently provides Ms. Jacinto-Castanon with the relief she seeks. On June 20, 2018, the President of the United States signed an Executive Order ("Executive Order") to address the situation and to require preservation of the "family unit" by keeping migrant families together during criminal and immigration proceedings to the extent permitted by law, while also maintaining "rigorous[]" enforcement of immigration laws. *See* Executive Order, Affording Congress an Opportunity to Address Family Separation § 1, 2018 WL 3046068 (June 20, 2018). The Executive Order did not address reunification of the children

currently separated from their parents, as is the case of Ms. Jacinto-Castanon's family. On Saturday, June 23, 2018, the Department of Homeland Security ("DHS") issued a "Fact Sheet" outlining the government's efforts to "ensure that those adults who are subject to removal are reunited with their children for the purposes of removal."[1] The Fact Sheet does not address the circumstances of this case. The Fact Sheet focuses on, among other things, processes for enhanced communication between separated parents and children – but only "for the purposes of removal." The Fact Sheet does not address reunification for other purposes, such as immigration or asylum proceedings, including circumstances at issue in this case.

      C.      **No Substantial Injury to Other Parties and Public Interest**

The Government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Johnson*, 80 F. Supp. 3d at, 191 (citing *Rodriguez*, 715 F.3d at 1145). Further, "the public interest is served when administrative agencies comply with [the requirements of federal law]." *Id*.

As previously stated, the actions of Defendants in separating parents and children seeking asylum violates the Due Process Clause of the Fifth Amendment, international treaties, and U.S. law. *Supra*, Section II. Further, releasing Ms. Jacinto-Castanon's children to her custody cannot cause any harm to Defendants, as the children are accused of no crime, Ms. Jacinto-Castanon is no more likely to commit any crime, and Defendants are relieved of the costs and burdens of housing and providing for the children since those expenses could be shouldered by her citizen-niece who has volunteered to sponsor the family during the pendency of asylum proceedings. As such, there is no injury to Defendants by granting this Motion.

---

[1] See U.S. Dep't of Homeland Sec., Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants (June 23, 2018), https://www.dhs.gov/news/2018/06/23/fact-sheet-zero-tolerance-prosecution-and-family-reunification.

### D. Reuniting This Family Serves the Public Interest

"It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971))." *Mills*, 571 F.3d at 1312. Reuniting Ms. Jacinto-Castanon with her sons serves the public interest because it would end the unconstitutional injury caused by their forced separation.

Therefore, all four elements of the test governing the consideration of a Preliminary Injunction request demonstrate that such relief is appropriate in this case.

### CONCLUSION

Plaintiffs request that the Court preliminarily enjoin Defendants from the unlawful forced separation of Ms. Jacinto-Castanon and her sons; for this court to order that Defendants not oppose the release of Ms. Jacinto-Castanon and her family on their own recognizance or if deemed necessary under appropriate restrictive conditions; enjoin Defendants from removing Ms. Jacinto-Castanon, from the country until she is reunited with her sons; and, in the event that Ms. Jacinto-Castanon is not permitted to remain in the United States, enjoin Defendants from separating Ms. Jacinto-Castanon from her children absent Ms. Jacinto-Castanon's permission or a hearing before a court where the government demonstrates that it is not in the children's best interest to be reunified with their parent.

Respectfully submitted this 27th day of June 2018,

/s/Claudia O'Brien
Claudia O'Brien, DC Bar No. 447354
Timilin Sanders, DC Bar No. 989110
Clayton LaForge, DC Bar No. 1033938
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington DC 20004
(202) 637-2200
claudia.o'brien@lw.com

9