UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
JACINTO-CASTANON DE                       )
NOLASCO, et al.,                          )
                                          )
         Plaintiffs,                      )
                                          )
         v.                               )         Civil Action No. 18-1536 (PLF)
                                          )
U.S. IMMIGRATION AND CUSTOMS              )
ENFORCEMENT, et al.,                      )
                                          )
         Defendants.                      )
_____)


OPINION

The matter is before the Court on plaintiffs' motion for a preliminary injunction

[Dkt. No. 2], requiring the United States government to immediately reunify plaintiff Alma Zuli

Jacinto-Castanon de Nolasco with her nine-year-old son and her eleven-year-old son, from

whom Ms. Jacinto-Castanon was forcibly separated shortly after crossing the United

States-Mexico border over two months ago. Upon careful consideration of the parties' filings,

the relevant legal authorities, the arguments of counsel at the hearing on July 12, 2018, and the

entire record in this case, the Court granted plaintiffs' motion by separate Order yesterday, July

18, 2018. This Opinion explains the reasons for that Order.[1]

---

[1]          The Court has reviewed the following documents and accompanying exhibits in
connection with the pending motion: Complaint ("Compl.") [Dkt. No. 1]; Plaintiffs' Motion for
a Preliminary Injunction ("Mot.") [Dkt. No. 2]; Plaintiffs' Motion for an Expedited Hearing
("Expedited Hearing Mot.") [Dkt. No. 5]; Plaintiffs' Motion for Clarification [Dkt. No. 9];
Defendants' Motion for Extension of Time [Dkt. No. 11]; Defendants' Opposition to Preliminary
Injunction Motion ("Opp'n") [Dkt. No. 12]; Plaintiffs' Reply to Preliminary Injunction Motion
("Reply") [Dkt. No. 13]; Defendants' Supplemental Notice ("Def. Suppl. Notice") [Dkt. No. 14];
Plaintiffs' Supplemental Notice ("Pl. Suppl. Notice") [Dkt. No. 15]; July 13, 2018 Status Report
[Dkt. No. 16]; and July 18, 2018 Order Regarding Preliminary Injunction [Dkt. No. 46].

# I. BACKGROUND

*A. Factual History*

On April 6, 2018, the Attorney General of the United States announced a "zero-tolerance" immigration policy, under which all immigrant parents unlawfully crossing the United States-Mexico border with their young children would be subject to criminal prosecution and separated from their children. See Compl. ¶ 35. Following widespread criticism over the separation of immigrant families, on June 20, 2018, the President of the United States signed an Executive Order requiring immigrant parents and their children who are apprehended at the border to remain together during the pendency of their criminal or immigration proceedings, to the extent permitted by law. See Mot. at 9. The Executive Order did not, however, address the reunification of the more than 2,000 children whom the government had already separated from their parents. See id. at 9-10.

Plaintiffs in this action are Ms. Jacinto-Castanon and her two sons, who were forcibly separated after crossing the border prior to the issuance of the Executive Order on June 20, 2018. Ms. Jacinto-Castanon is presently detained in Arizona, while her sons are detained in California. Compl. ¶ 51. They are being held solely as civil immigration detainees and not in association with any criminal charge or conviction. Ms. Jacinto-Castanon has passed a credible fear interview – the first step in the asylum process. There is no evidence suggesting that Ms. Jacinto-Castanon is not the biological mother of her sons. Nor is there any suggestion that she is an unfit parent or poses a danger to her sons. In addition, Ms. Jacinto-Castanon's niece is a U.S. citizen who resides in North Carolina and has offered to sponsor Ms. Jacinto-Castanon and her sons during the pendency of Ms. Jacinto-Castanon's asylum proceedings. See Mot. Ex. 1, June 26, 2018 Jacinto-Castanon Aff. at ¶ 22.

In May 2018, after gang members murdered her husband and threatened to kill her and kidnap her children, Ms. Jacinto-Castanon and her sons fled Guatemala to pursue asylum in the United States. See Compl. ¶ 45. On May 14, 2018, they entered the United States near Lukeville, Arizona and told border agents that they intended to seek asylum. See id. at 1 and ¶ 46. Although they were initially detained together, the family was forcibly separated two days later on May 16, 2018. See id. ¶¶ 46-49. Ms. Jacinto-Castanon was taken to a court hearing that day and when she returned, her children were gone: "The immigration officers told me that my children had been taken away, but did not tell me where they were. The immigration officers stated that if the [g]overnment wanted to keep my children they would do so, and I would be deported alone and be forced to leave my sons behind." See Mot. Ex. 1, June 26, 2018 Jacinto-Castanon Aff. at ¶¶ 12-13. Unbeknownst to Ms. Jacinto-Castanon, her sons had been deemed "unaccompanied minors" because they had "no parent or legal guardian in the United States . . . available to provide care and physical custody." Opp'n at 7. As a result, her sons were transferred to the custody of the Office of Refugee Resettlement ("ORR") and detained in a separate facility. See id.[2]

Ms. Jacinto-Castanon later pled guilty to misdemeanor improper entry under 8 U.S.C. § 1325(a) and was sentenced to time served. See Opp'n at 7. She was then transferred to

_____

[2]     The Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub. L. No. 110-457 (Dec. 23, 2008), provides that "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of" the Department of Health and Human Services, and its sub-agency, ORR. See 8 U.S.C. § 1232(b)(1). An "unaccompanied alien child" is a child under eighteen years of age with no lawful immigration status in the United States who has neither a parent or legal guardian in the United States, nor a parent or legal guardian in the United States "available to provide care and physical custody." See 6 U.S.C § 279(g)(2). Ms. Jacinto-Castanon's children, however, are not true unaccompanied minors within the meaning of the statute; they were rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants. See Order, Ms. L. v. U.S. Immigration and Customs Enf't, No. 18-0428, ECF No. 101, at 2-3 (S.D. Cal. July 10, 2018); see also D.B. v. Cardall, 826 F.3d 721, 744-50 (4th Cir. 2016) (Floyd, J., dissenting).

immigration detention for consideration of her asylum application.  She subsequently passed a credible fear interview and is no longer subject to expedited removal or mandatory immigration detention.  See Opp'n at 21 n.8.  She is currently detained in Eloy, Arizona and is awaiting an asylum hearing.  See Mot. Ex. 1, June 26, 2018 Jacinto-Castanon Aff. at ¶ 16; Pl. Suppl. Notice at 3.

Ms. Jacinto-Castanon has not seen her sons since May 16, 2018.  See Mot. Ex. 1, June 26, 2018 Jacinto-Castanon Aff. at ¶¶ 12-13.  She believes that her sons are in a shelter in Los Angeles, California during the day, and then stay with an unrelated and unknown family at night.  See id. ¶ 18.  She has spoken to her sons only a few times over the phone each week since their separation.  Id. ¶ 19.  During the few conversations that they have had, her youngest son "cries and tells [her] he has nightmares."  Id. ¶ 20.  Both of her sons tell her that they are upset and afraid, and "wish they could be together as a family."  Id.  Due to her separation from her sons and her lack of information about their well-being, she feels "profound anguish, a deep sense of helplessness, and depression."  Compl. ¶ 54.

## B.  Procedural History

Plaintiffs brought suit on June 27, 2018 against certain federal agencies and officials responsible for enforcing immigration laws and regulations.  See Compl. ¶¶ 12-27.  The complaint alleges, inter alia, that plaintiffs' continued separation, absent a showing that Ms. Jacinto-Castanon is an unfit parent or otherwise presents a danger to her sons, violates their substantive due process right to family integrity under the Fifth Amendment to the United States Constitution.  See id. ¶¶ 60-63.

On June 27, 2018, plaintiffs filed a motion for a preliminary injunction seeking immediate reunification.  The next day, plaintiffs filed a motion for an expedited hearing on their

preliminary injunction motion, see Expedited Hearing Mot. at 1, which the Court granted on

June 29, 2018. After the preliminary injunction motion was fully briefed, the Court held a

hearing on the motion on July 12, 2018. At the hearing, counsel for defendants represented that

Ms. Jacinto-Castanon's children are detained in a government-licensed facility during the day,

where they receive religious services and various other services. He explained that the children

stay with foster families in the evening. He further explained that upon reunification, defendants

could: (1) detain Ms. Jacinto-Castanon and her sons together in a family residential facility

pending asylum proceedings; (2) place the family with a sponsor – Ms. Jacinto-Castanon's

U.S.-citizen niece in North Carolina – pending asylum proceedings; or (3) release Ms.

Jacinto-Castanon on bond and with a monitoring device, such as an ankle bracelet, pending

asylum proceedings.

Meanwhile, on June 26, 2018, Judge Dana M. Sabraw of the United States

District Court for the Southern District of California issued a class-wide preliminary injunction

requiring the government to reunify children under the age of five with their parents by July 10,

2018, and those age five and over by July 26, 2018. See Ms. L. v. U.S. Immigration and

Customs Enf't, No. 18-0428, 2018 WL 3129486 at *11-12 (S.D. Cal. June 26, 2018). The class

is defined to include: "All adult parents who enter the United States at or between designated

ports of entry who (1) have been, are, or will be detained in immigration custody by the

[Department of Homeland Security ("DHS")], and (2) have a minor child who is or will be

separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody,

absent a determination that the parent is unfit or presents a danger to the child." Id. at *3 n.5.

The class does not include "parents with criminal history or communicable disease, or those

apprehended in the interior of the country or subject to the [Executive Order]." See id.

## II.  LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. NRDC, 555 U.S. 7, 24 (2008).  A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief:  likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest."  League of Women Voters of the United States v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting Pursuing America's Greatness v. FEC, 831 F.3d 500, 505 (D.C. Cir. 2016)).  The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted.  Hospitality Staffing Solutions, LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in Winter v. NRDC, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another.  Damus v. Nielsen, No. 18-00578, 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting Davis v. PBGC, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). This Circuit has hinted, though not held, that Winter v. NRDC – which overturned the Ninth Circuit's "possibility of irreparable harm" standard – establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]."  Sherley v. Sebelius, 644 F.3d 388, 392-93 (D.C. Cir. 2011) (quoting Davis v. PBGC, 571 F.3d at 1296 (Kavanaugh, J., concurring)); see League of Women Voters of the United States v. Newby, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after Winter v. NRDC). Also unresolved is the related question of "whether, in cases where the other three factors strongly favor issuing an injunction, a plaintiff need only raise a serious legal question on the

merits." Aamer v. Obama, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (internal quotation marks and citation omitted).  Regardless of the extent to which showings of irreparable harm and success on the merits can be diminished, however, it is clear that where the plaintiff can show neither harm nor likelihood of success, no relief is warranted.  See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 205 F. Supp. 3d 4, 26 (D.D.C. 2016).

## III.  DISCUSSION

Ms. Jacinto-Castanon seeks a preliminary injunction directing defendants to immediately reunify her with her sons.  For the reasons that follow, the Court finds that the circumstances presented here merit this extraordinary form of relief, and therefore has ordered defendants to reunify Ms. Jacinto-Castanon with her sons on or before midnight on Friday, July 20, 2018.

### A.  Threshold Matters

Before turning to the four preliminary injunction factors, the Court addresses three threshold matters.  First, defendants contend that the Court lacks jurisdiction to grant the requested relief because plaintiffs have not pled a waiver of sovereign immunity.  See Opp'n at 14-15.  Section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, however, explicitly waives sovereign immunity for claims – even non-APA claims, such as the claims at issue here – brought directly under the Constitution.  See Trudeau v. FTC, 456 F.3d 178, 185-87 (D.C. Cir. 2006).

Second, defendants assert that plaintiffs are not in custody within the jurisdiction of this Court.  Defendants argue that the Court therefore lacks jurisdiction to grant plaintiffs' request for a writ of habeas corpus.  See Opp'n at 17-19.  For purposes of this motion, however,

the Court need not address plaintiffs' habeas corpus claim. The Court has federal-question jurisdiction under 28 U.S.C. § 1331 based on plaintiffs' separate substantive due process claims. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). In addition, defendants contend that to the extent that Ms. Jacinto-Castanon has sought an order directing her release from detention on parole pending completion of her immigration proceedings, the Court would lack jurisdiction to grant it. See Opp'n at 11-12; Damus v. Nielsen, 2018 WL 3232515, at *5 (permitting review of parole methodologies that do not require review of individual parole decisions). But for purposes of this motion, Ms. Jacinto-Castanon is seeking immediate reunification with her sons, which can be accomplished, for example, by temporarily detaining families together in family residential facilities. See Ms. L v. U.S. Immigration and Customs Enf't, 302 F. Supp. 3d 1149, 1159-60 (S.D. Cal. 2018).

      Third, defendants suggest that the motion for a preliminary injunction is subject to a heightened standard, under which plaintiffs must "clearly" show that they are entitled to relief or that "extreme or very serious damage" will result from the denial of the injunction. See Opp'n at 10-11 (quoting Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd., 15 F. Supp. 2d 1, 4 (D.D.C. 1997), aff'd, 159 F.3d 636 (D.C. Cir. 1998)). It is true that some courts in this District have recognized that if the requested relief "would alter, not preserve, the status quo," the movant's claim is subject to a somewhat higher standard. See, e.g., Aracely v. Nielsen, No. 17-1976, 2018 WL 3243977, at *5 (D.D.C. July 3, 2018) (internal quotation marks and citations omitted); Elec. Privacy Info. Ctr. v. Dep't of Justice, 15 F. Supp. 3d 32, 39 (D.D.C. 2014). But the requested preliminary injunction would preserve, rather than alter, the status quo – that is, the "last uncontested status which preceded the pending controversy." Consarc Corp. v.

U.S. Treasury Dept. of Foreign Assets Control, 71 F.3d 909, 913 (D.C. Cir. 1995). Given that Ms. Jacinto-Castanon has contested her separation from the moment that she was separated from her sons, the last uncontested status occurred when she and her sons were approached by border agents after crossing the United States-Mexico border. In any event, even if a heightened standard were appropriate, plaintiffs satisfy the higher standard proposed by defendants for the reasons given below.

  The Court now turns to the four preliminary injunction factors.

### B. The Four Preliminary Injunction Factors

  Upon careful review of the parties' submissions, and in particular, the affidavit submitted by Ms. Jacinto-Castanon and the findings of medical experts studying the effects of immigration detention on young children, the Court concludes that Ms. Jacinto-Castanon and her sons easily meet their burden to show likely success on the merits and irreparable harm, and that the balance of equities and the public interest weigh in their favor, thus warranting issuance of a preliminary injunction.

### 1. Likelihood of Success on the Merits

  While plaintiffs seeking a preliminary injunction have the burden of demonstrating likelihood of success on the merits, they are not required to prove their case in full at the preliminary injunction stage, but only such portions that enable them to obtain the injunctive relief that they seek. See Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). At this preliminary stage, the Court easily concludes that Ms. Jacinto-Castanon and her sons are likely to succeed on at least one of their claims – namely their substantive due process claim that their continued separation, absent a determination that Ms. Jacinto-Castanon is either an unfit

parent or presents a danger to her sons, violates their right to family integrity under the Fifth

Amendment.  See Ms. L. v. U.S. Immigration and Customs Enf't, 2018 WL 3129486, at *7-9;

see also Mem. Op. & Order, W.S.R. v. Sessions, No. 18-4265, at 10-15 (N.D. Ill. July 9, 2018).

        The Fifth Amendment mandates that no person shall "be deprived of life, liberty,

or property, without due process of the law."  U.S. CONST. amend. V.  Due process protects

noncitizens who are on U.S. soil.  See Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due

Process Clause applies to all 'persons' within the United States, including aliens, whether their

presence here is lawful, unlawful, temporary, or permanent.").  The due process guarantee has

both procedural and substantive components.  Only the substantive component is at issue here.

Substantive due process bars government interference with certain fundamental rights

"regardless of the fairness of the procedures used to implement them."  Daniels v. Williams, 474

U.S. 327, 331 (1986).  There are "two strands of the substantive due process doctrine."  D.B. v.

Cardall, 826 F.3d at 740; see Barnes v. District of Columbia, 793 F. Supp. 2d 260, 276-78

(D.D.C. 2011); see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs., 640 F.3d

716, 728 n.6 (6th Cir. 2011); Seegmiller v. LaVerkin City, 528 F.3d 762, 769 (10th Cir. 2008);

United States v. Loy, 237 F.3d 251, 269-70 (3d Cir. 2001).  The first strand protects rights that

are "fundamental," whereas the second "protects against the exercise of governmental power that

shocks the conscience."  D.B. v. Cardall, 826 F.3d at 740; see Barnes v. District of Columbia,

793 F. Supp. 2d at 276-78.

        The Supreme Court has made clear that parents have a fundamental liberty

interest in family integrity, and in the care, custody, and control of their children.  See Troxel v.

Granville, 530 U.S. 57, 65-66 (2000) ("The liberty interest at issue in this case – the interest of

parents in the care, custody, and control of their children – is perhaps the oldest of the

fundamental liberty interests recognized by this Court."); Quilloin v. Walcott, 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."); Stanley v. Illinois, 405 U.S. 645, 651 (1972). Ms. Jacinto-Castanon and her sons contend that their continued separation, absent a determination that she is either an unfit parent or presents a danger to her sons, impermissibly interferes with their fundamental right to family integrity. See Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (holding that a substantive due process claim requires a "careful description" of the asserted fundamental liberty interest). Framed in this manner, plaintiffs likely will show that defendants' actions implicate a fundamental liberty interest that has been infringed. See Ms. L. v. U.S. Immigration and Customs Enf't, 2018 WL 3129486, at *7-9; Mem. Op. & Order, W.S.R. v. Sessions, No. 18-4265, at 10-15.[3]

Defendants respond that "[t]he extent of any right that parents may have in terms of a relationship with their children (or vice versa) necessarily depends on the circumstances of a particular case." Opp'n at 19. According to defendants, because Ms. Jacinto-Castanon is in lawful immigration custody, she is "unavailable to provide care and physical custody" for purposes of the TVPRA, and therefore custody of her sons must be transferred to ORR and they must be detained in a separate facility from their mother. See id. at 20. The Court disagrees. See supra at 3 n.2. The fact that Ms. Jacinto-Castanon is lawfully detained in immigration custody does not eliminate her due process right to family integrity. The statutes cited by defendants to separate Ms. Jacinto-Castanon from her sons explicitly require defendants to

---

[3]    To be clear, Ms. Jacinto-Castanon does not challenge her initial criminal detention pending prosecution for improper entry under 8 U.S.C. § 1325(a). Rather, she challenges her continued separation from her sons now that she has been transferred from criminal detention to civil immigration detention pending removal proceedings.

"promptly [place unaccompanied alien children] in the least restrictive setting that is in the best

interest of the child." 8 U.S.C. § 1232(c)(2)(A). Rather than placing Ms. Jacinto-Castanon's

sons in the least restrictive setting, defendants have continued to separate Ms. Jacinto-Castanon

and her sons in a manner that absolutely prevents her from providing care to, or exercising

custody and control over, her sons. Plaintiffs therefore have demonstrated that defendants'

actions likely implicate their right to family integrity.

Substantial governmental burdens on family integrity are subject to strict scrutiny

review, and they survive only if the burden is narrowly tailored to serve a compelling state

interest. See Goings v. Court Servs. & Offender Supervision Agency, 786 F. Supp. 2d 48, 70

(D.D.C. 2011) (granting preliminary injunction where plaintiff's substantive due process claim

premised on no-contact order prohibiting communication with his children likely would not

survive strict scrutiny review); see also Abigail Alliance for Better Access to Developmental

Drugs v. von Eschenbach, 495 F.3d at 702 (holding that the Due Process Clause "provides

heightened protection against government interference with certain fundamental rights and

liberty interests . . . including the rights to . . . direct the education and upbringing of one's

children" (internal quotation marks and citations omitted)); Franz v. United States, 707 F.2d 582,

602 (D.C. Cir. 1983) (severance of relationship between parent and his child will survive

constitutional scrutiny only if: (1) the government's interest is compelling; (2) there is a

particularized showing of the government's interest in terminating the parental relationship; (3) it

is impossible to accomplish that interest in a less restrictive way; and (4) the parties are afforded

procedural due process protections); U.S. v. Breeden, No. 16-0008, 2016 WL 8943168, at *2

(D.D.C. June 3, 2016); U.S. v. Godoy, No. 10-0016, 2014 WL 12618708, at *5 (D.D.C. June 13, 2014).[4]

There is no question that defendants have directly and substantially burdened plaintiffs' right to family integrity. Defendants have continued to detain Ms. Jacinto-Castanon and her sons in separate facilities for many weeks with only periodic phone calls. See Jordan by Jordan v. Jackson, 15 F.3d 333, 346 (4th Cir. 1994) ("The forced separation of parent from child, even for a short time, represents a serious impingement on [parental] rights."). The separation imposed by defendants absolutely precludes Ms. Jacinto-Castanon's involvement in any aspect of her sons' care, custody, and control, from religion to education. And the forced separation prevents her from expressing love for, and comfort to, her sons – comfort that they surely need as they endure the bewildering experience of detention.

While the need to protect children from unfit parents is a well-recognized compelling reason for burdening family integrity, defendants must make at least some showing of parental unfitness in order to establish such a compelling state interest. See Quilloin v. Walcott, 434 U.S. at 255 ("We have little doubt that the Due Process Clause would be offended [i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest." (internal quotation marks and citation omitted)); United States v. Loy, 237 F.3d at 269-70. Here, there is no evidence suggesting that

---

[4]        To the extent that plaintiffs' claim is properly analyzed under the "shock the conscience" standard set forth in City of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998), defendants' actions also fail under that standard for the same reasons described by Judge Sabraw in the class action. See Ms. L. v. U.S. Immigration and Customs Enf't, 2018 WL 3129486, at *7-9; see also Mem. Op. & Order, W.S.R. v. Sessions, No. 18-4265, at 10-15; Barnes v. District of Columbia, 793 F. Supp. 2d at 276-78.

Ms. Jacinto-Castanon is not the biological mother of her sons. Nor is there any suggestion that she is an unfit mother or poses a danger to her sons.

Defendants contend that the separation occurred because Ms. Jacinto-Castanon was subject to lawful prosecution under 8 U.S.C. § 1325(a). See Opp'n at 20-21. They also argue that she remains separated from her sons because she is subject to "mandatory detention" pending immigration proceedings. In a footnote, however, defendants acknowledge that Ms. Jacinto-Castanon's credible fear claim "has been assessed and she is no longer subject to expedited removal or mandatory detention." See id. at 21 n.8. In addition, defendants do not dispute that all criminal proceedings have concluded and that Ms. Jacinto-Castanon has served her accompanying sentence. Furthermore, defendants do not dispute that Ms. Jacinto-Castanon's sons have not been charged with any crime. So there is no criminal law enforcement reason to maintain the separation of Ms. Jacinto-Castanon and her sons. Moreover, the fact that Ms. Jacinto-Castanon may be subject to some form of immigration detention does not explain why she must be detained separately from her sons. The same goal of detention can be accomplished, for example, by temporarily detaining families together in family residential facilities. See Ms. L v. U.S. Immigration and Customs Enf't, 302 F. Supp. 3d at 1159-60.

While defendants have a legitimate interest in enforcing the immigration laws and deterring unlawful immigration, nothing in federal law suggests that deterring immigration by indefinitely separating families once the parents have been transferred to immigration custody is a compelling or legitimate government objective. Moreover, defendants' forced separation policy is overbroad because it equally deters both lawful and unlawful conduct. As Judge Boasberg recently put it in a related context: "[The government] maintains that one particular individual may be civilly detained for the sake of sending a message of deterrence to other

Central American individuals who may be considering immigration. This appears to be out of line with analogous Supreme Court decisions." R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 188-89 (D.D.C. 2015). Indeed, the Executive Order names a less restrictive alternative: temporarily detaining parents together with their children. See Mot. at 9. The fact that immigration officials administered the same statutes and regulations through 2017 without routinely separating families lends further support to the conclusion that defendants' actions are not narrowly tailored. The "zero-tolerance" immigration policy therefore is likely not the least restrictive means for furthering defendants' purported interest in enforcing the immigration laws.

For these reasons, the Court finds that Ms. Jacinto-Castanon and her sons likely will succeed on their substantive due process claim premised on their constitutional right to family integrity.

## 2. Irreparable Harm

As to whether plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief, there can be no dispute. Ms. Jacinto-Castanon desperately wants to be reunited with her sons. She has offered overwhelming evidence in her own words and from medical experts describing the grave and lasting consequences of separating parents from their young children. Defendants have not attempted to refute this evidence. For good reason.

The record in this case demonstrates that Ms. Jacinto-Castanon's separation from her sons has been excruciating. She has not seen her sons in over two months. See Mot. Ex. 1, June 26, 2018 Jacinto-Castanon Aff. at ¶¶ 12-13. Beyond knowing the name and location of the shelter where they are held during the day, Ms. Jacinto-Castanon has little, if any, information about their health, well-being, or daily activities. As counsel for defendants explained at the July 12, 2018 hearing, her sons are detained in a government-licensed facility during the day, where

they receive religious services and various other services. He further explained that the children stay with foster families in the evening. But Ms. Jacinto-Castanon has no specific information about the people who have had custody of her sons over the last two months.

In the few, fleeting telephone conversations she has been able to arrange with her sons, her youngest son "cries and tells [her] he has nightmares." Mot. Ex. 1, June 26, 2018 Jacinto-Castanon Aff. at ¶ 20. Both of her sons tell her that they are upset and afraid, and "wish they could be together as a family." Id. Due to her separation from her sons and her lack of information about their well-being, she feels "profound anguish, a deep sense of helplessness, and depression." Compl. ¶ 54. Keeping Ms. Jacinto-Castanon separated from her sons, in a facility where she has little or no direct access to basic information about their health or general well-being, plainly causes irreparable harm. Her sons are innocent of any wrongful conduct, and she is, at most, guilty of a petty misdemeanor. See United States v. Dominguez-Portillo, No. 17-4409, 2018 WL 315759, at *8 n.14 (W.D. Tex. Jan. 5, 2018) (describing violations of 8 U.S.C. § 1325(a) as "quite literally one of the least serious federal offenses").

The panic and desperation that Ms. Jacinto-Castanon has endured will no doubt sound familiar to anyone who has ever, even momentarily, lost sight of a child entrusted to his or her care. But counsel for plaintiffs have also offered evidence from medical experts describing the profound and long-term consequences that separation can have on a child's well-being, safety, and development. According to the American Academy of Pediatrics, "[t]he psychological distress, anxiety, and depression associated with separation from a parent would follow the children well after the immediate period of separation – even after the eventual reunification with a parent or other family." See Compl. ¶ 30 (citing Julie M. Linton, Marsha Griffin, Alan J. Shapiro, American Academy of Pediatrics Policy Statement, Detention of

Immigrant Children, Pediatrics, Vol. 139, Num. 4, April 2017 ("Policy Statement")).  Detained

immigrant children may experience high rates of post-traumatic stress disorder, anxiety,

depression, and suicidal ideation, in addition to developmental delays or poor psychological

adjustment.  See Mot. at 9 (citing Policy Statement).  "[H]ighly stressful experiences, like family

separation, can . . . disrupt[ ]a child's brain architecture and affect[ ] his or her short- and long-

term health.  This type of prolonged exposure to serious stress – known as toxic stress – can

carry lifelong consequences for children."  Reply at 6 (quoting American Academy of Pediatrics,

AAP Statement Opposing Separation of Children and Parents at the Border, May 8, 2018,

available at https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/StatementOpposing

SeparationofChildrenandParents.aspx).  Based on these concerns, the independent child advocate

for Ms. Jacinto-Castanon's sons – appointed pursuant to the TVPRA – has determined that it is

in the "best interest" of Ms. Jacinto-Castanon's sons to be "immediately reunified with their

mother."  See July 13, 2018 Status Report Ex. 1, July 6, 2018 Letter from Gladis Molina Alt

at 2.[5]

Separation irreparably harms plaintiffs every minute it persists.  This evidence,

combined with the constitutional violation alleged, shows that plaintiffs are not only likely – but

certain – to suffer irreparable injury if the requested preliminary injunction does not issue.

### 3.  The Balance of Equities

In considering whether to grant a preliminary injunction, the Court must "balance

the competing claims of injury and . . . consider the effect on each party of the granting or

---

[5]      Not only does forced family separation cause severe emotional harm, but it also
forces parents and children to make critical legal decisions in isolation from one another.  See
United States v. Dominguez-Portillo, 2018 WL 315759, at *1-2 (explaining that defendants "had
not received any paperwork or information concerning the whereabouts or well-being of" their
children).

withholding of the requested relief." Texas Children's Hosp. v. Burwell, 76 F. Supp. 3d 224, 245 (D.D.C. 2014) (internal quotation marks and citations omitted). Where an injunction will "not substantially injure other interested parties," the balance of equities tips in the movant's favor. League of Women Voters of the United States v. Newby, 838 F.3d at 12 (citation omitted). Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." Open Communities Alliance v. Carson, 286 F. Supp. 3d 148, 179 (D.D.C. 2017).

As discussed, the harm to Ms. Jacinto-Castanon and her sons is obvious and intense. Every additional day of separation causes irreparable harm. Lack of information is but one necessary consequence of separation. Another consequence of separation is lasting damage to the children's well-being and their relationship with their mother. And the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." Mills v. District of Columbia, 571 F.3d 1304, 1312 (D.D.C. 2009) (citation omitted).

Defendants contend that affording the relief sought by plaintiffs in this action – immediate reunification – would interfere with their ongoing efforts to reunify all class members with their children by July 26, 2018, as required by the preliminary injunction issued in the class action pending before Judge Sabraw. See Opp'n at 11-13. They contend that they are devoting significant resources to facilitating compliance for all class members, including Ms. Jacinto-Castanon. A conflicting order from this Court, defendants argue, may impact these compliance efforts.

While defendants have recently advised Judge Sabraw that they are committed to reuniting all of the separated children with their parents by July 26, 2018, see Ms. L. v. U.S. Immigration and Customs Enf't, No. 18-0428, ECF No. 109, at 1 (S.D. Cal. July 15, 2018),

defendants previously have asked for partial relief from the timelines set in the class action. The July 26, 2018 deadline for reunification, therefore, is not guaranteed. Moreover, to the extent that defendants' concern stems from limited resources, defendants fail to make any effort to explain how an order requiring reunification of one parent with her sons will hinder their compliance with the class-wide preliminary injunction. Defendants are free to commit more resources to their reunification efforts to compensate for any additional burden required to reunify one parent with her sons, particularly where these family separations were the result of defendants' own decision to adopt a zero-tolerance policy for immigrant families without specifying any basic procedure or plan to facilitate subsequent reunification. Given the gravity of the harm at issue, the need to expend resources cannot outweigh these threats to constitutional rights. The harm to defendants is self-inflicted: defendants embarked on a zero-tolerance policy, bringing misdemeanor charges and separating thousands of children from their parents, without a plan for reunification after the short, time-served sentences for improper entry into the United States.

The Court recognizes that all of the children of class members are suffering irreparable harm. But the record evidence compiled in this case demonstrates that prompt reunification of Ms. Jacinto-Castanon with her sons will not significantly interfere with defendants' efforts to comply with the class action order. The fact is that Ms. Jacinto-Castanon and her sons have met their burden to show that every day of separation is causing serious and potentially permanent harm. The balance of equities therefore favors accelerated reunification of Ms. Jacinto-Castanon with her sons.

4. The Public Interest

The final factor for consideration is the public interest. The public's interest in enforcing the criminal and immigration laws of this country would be unaffected by issuance of the requested preliminary injunction. The Executive Branch remains free to prosecute those who unlawfully enter the United States and institute removal proceedings against them. But the public also has an interest in ensuring that its government respects the rights of immigrants to family integrity while their removal proceedings – or in this case, asylum proceedings – are pending. See League of Women Voters of the United States v. Newby, 838 F.3d at 12 (holding that there is a substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations"). The public interest in upholding and protecting such rights in the circumstances presented here is served by issuing the requested injunction.

*C. Removal of Plaintiffs from the United States*

Defendants have acknowledged that several immigrant parents have been removed from the United States without their children. See Ms. L. v. U.S. Immigration and Customs Enf't, No. 18-0428, ECF No. 104, at 5-6 (S.D. Cal. July 12, 2018) (confirming that twelve parents have been removed without their children thus far). In view of that reality, Judge Sabraw has issued a temporary restraining order prohibiting the government from removing any parents without their children upon or after reunification until further order of that court. See Ms. L. v. U.S. Immigration and Customs Enf't, No. 18-0428, ECF No. 116 (S.D. Cal. July 16, 2018); see also Mem. Op. & Order, W.S.R. v. Sessions, No. 18-4265, at 30. Consistent with that order, defendants are prohibited from removing plaintiffs from the United States until further order of this Court.

## IV.  CONCLUSION

By Order issued yesterday, July 18, 2018, the Court granted plaintiffs' motion for a preliminary injunction.  Defendants must reunify Ms. Jacinto-Castanon with her sons and must do so on or before midnight on Friday, July 20, 2018.  Defendants are prohibited from removing plaintiffs from the United States until further order of this Court.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  July 19, 2018